**COMMITTEE OF BLIND VENDORS OF the DISTRICT OF COLUMBIA, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**Civ. A. No. 88–0142–OG.**

United States District Court, District of Columbia.

Oct. 7, 1988.

Robert Humphreys, Humphreys & Mitchell, Washington, D.C., for plaintiffs.

Domenique Kirchner, Asst. Corp. Counsel, D.C., Washington, D.C., for defendants.

## MEMORANDUM

GASCH, Senior District Judge.

The matters before the Court are defendants' motion to dismiss, or, in the alternative, for summary judgment, and plaintiffs' motion for certification as class action. This is a suit brought by blind vendors and their representatives against the District of Columbia Rehabilitation Services Administration (DCRSA) and other District of Columbia agencies. The gravamen of plaintiffs' complaint is that the defendants have mismanaged the District's Randolph–Sheppard program to the detriment of the plaintiffs. Plaintiffs seek a writ of mandamus to compel defendants to adhere to the Randolph–Sheppard Act, and damages of approximately $1,166,000 for breach of contract. On September 28, 1988, the Court issued an order denying in part defendants' motion to dismiss, or, in the alternative, for summary judgment and granting plaintiffs' motion for certification as a class action. This memorandum is to accompany that order.

## I. *Introduction*

The Randolph–Sheppard Act authorizes state agencies approved by the Secretary of Education to license blind persons to operate vending facilities on federal property. 20 U.S.C. § 107. State licensing agencies (SLA's) select the location and type of facility to be provided. *Id.; see* 34 C.F.R. § 395.7. Blind vendor programs are to be self-supporting. Net proceeds are to accrue to the blind vendors, though the SLA may set aside funds for maintenance and replacement of equipment, management services, and assuring a fair minimum return to vendors (although the amounts set aside must be reasonable in the view of the Secretary of Education). 20 U.S.C. § 107b. Amounts may also be set aside for pension fund, health insurance, and sick leave expenses by a majority vote of the blind vendors. SLA's must also provide an opportunity for a fair evidentiary hearing to licensees dissatisfied with operation or administration of the vending facility program, and agree to submit grievances not resolved by such hearing to an arbitration panel convened by the Secretary of Education. *Id.* § 107d-2. The arbitration panel's decision "shall be subject to appeal and review as a final agency action" under the Administrative Procedures Act. 20 U.S.C. § 107d-1.

Plaintiffs allege that from December, 1974 to the present, DCSLA has neglected

its duties to identify and/or satisfactorily account for all sources of vending machine and vendor income, and thus deprived the blind vendors of substantial revenues. Defendants have also allegedly failed to identify satisfactory sites for vending facilities. Plaintiffs' complaint also asserts that DCRSA violated the Randolph–Sheppard Act by contracting with DAC Corporation to manage the Randolph–Sheppard program, and that DAC failed to provide adequate services, and wrongfully set aside funds. DAC also allegedly failed to deposit into the blind vendors' pension fund monies set aside for that purpose and likewise failed to remit to the IRS monies collected for vendors' social security contributions. Moreover, DCSRA has purportedly violated the Act by failing to enunciate or implement a training and upward mobility program and by requiring that cafeterias operated on federal property employ sighted persons. The D.C. government has allegedly entered into a contract with GVMS, Inc. allowing that company to collect income from vending machines and receive a commission on the collections. Defendant DCRSA is claimed to have operated "departmental" vending stands with sighted vendors. Plaintiffs assert that these departmental stands have lost money, depleting the stabilization fund of the blind vendors. A surplus from the set aside levy from 1984 has allegedly not been distributed despite promises that it would be; likewise, a promised reduction in the percentage of funds set aside has not occurred. Finally, defendants have allegedly excluded plaintiff Committee of Blind Vendors (CBV) from the decisionmaking process and failed to properly administer the vendors' pension fund.

On October 23, 1985, plaintiff CBV requested a hearing from the DCRSA, making some of the same allegations contained in the complaint giving rise to this action. In November, DCRSA responded by promising to conduct an audit and amend the promotion and transfer policy. CBV rejected DCRSA's response and again requested a hearing. In January, 1986, DCRSA requested that the D.C. Office of Fair Hearings conduct a hearing. At a prehearing conference in March, the Office of Fair Hearings determined that an evidentiary hearing should be deferred until the audits then being conducted by the Department of Human Services and the City Auditor were complete. Upon the completion of those audits in August, CBV renewed its request for a hearing and filed an amended complaint which included most of the charges present in this suit. A hearing was scheduled for September 2, 1987, but on August 28 CBV requested an indefinite continuance in light of an opinion from the D.C. Superior Court holding that an evidentiary hearing on a Randolph–Sheppard complaint would have no legal effect. Plaintiffs subsequently filed their suit in this Court in January, 1988.

## II. *Discussion*

### A. Motion to Dismiss or for Summary Judgment

#### 1. *Standing*

■ Defendants assert five grounds in support of their motion. First, they claim that plaintiffs lack standing. Plaintiffs are both individuals and organizations. Plaintiffs Veronica Holt and Gale Conard are blind vendors as well as heads of the respective organizational plaintiffs. Defendants argue that they do not have standing to bring the claims of economic injury because there is no specific allegation that either of them suffered any discrete injury; the complaint alleges that all blind vendors were injured. This is an unconvincing argument. The two individual plaintiffs clearly have standing to the extent that they were injured by the defendants' acts.

■ Defendants contend that plaintiff CBV lacks standing because it is an agency within the District of Columbia and thus lacks both the power to sue and the necessary adverseness with respect to the District. Defendants argue that BVC is an agency of the District because it was created by a Mayoral Order. *See* Mayor's Order 77–131 (August 8, 1977). Plaintiffs contend that plaintiff CBV is a creation of Congress, not the District of Columbia. The Randolph–Sheppard Act provides that

**1238**

SLA's are to "conduct the biennial election of a Committee of Blind Vendors." 20 U.S.C. § 107b–1. The statute also requires SLA's to incorporate the CBV's into the decisionmaking process.[1] The statute does not, however, explain how CBV's are to be created, and whether they are creatures of state (*i.e.*, District of Columbia) government. The preamble to the federal regulations implementing the Act declares that the "Randolph–Sheppard Act Amendments of 1974 formally establish a State Committee of Blind Vendors." 42 Fed.Reg. 15802, 15803 (March 23, 1977). The Court is persuaded that the statute allows the state blind vendor committees to sue on behalf of vendors. The statute provides that their functions include "receiving grievances of blind licensees and serving as advocates for such licensees." 20 U.S.C. § 107b–1. The federal regulations provide that BVC's are to "[r]eceive and transmit to the State licensing agency grievances at the request of blind vendors and serve as advocates for such vendors in connection with such grievances." 34 C.F.R. § 395.14(b)(2). If CBV is to represent vendors in hearings against SLA's, and the results of those hearings may be arbitrated and ultimately litigated, it would appear that CBV is empowered to represent vendors in suits against SLA's. There is nothing to suggest that CBV's are to cease their representation if the vendors exercise their statutory right to appeal; the specific provision of an appeal process suggests the contrary. Moreover, a CBV has sued the state government in at least one other case, although the issue of standing was not specifically addressed in that decision. *See Massachusetts Elected Committee of Blind Vendors v. Matava*, 482 F.Supp. 1186 (D.Mass.1980). The Court holds that plaintiff CBV has standing to maintain this action.

■ Defendants also argue that both CBV and plaintiff Randolph–Sheppard Vendors Association of the District of Columbia (RSVA) lack standing to sue as associations for those claims that seek a monetary remedy.[2] In *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1976), the Supreme Court articulated the requirements for associational standing:

> [A]n association has standing to sue on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members.

*Id.* at 343, 97 S.Ct. at 2441. Both plaintiffs easily satisfy the first two tests. Defendants argue that the third prong is not satisfied. They claim that individual participation is required since monetary damages are sought. In *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1974), the Court explained that "whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of relief sought." *Id.* at 515, 95 S.Ct. at 2213. The Supreme Court explained in dicta that the plaintiff Home Builders would not have standing to obtain monetary relief because the amount of damage to its members was not equally shared among its members and would require individualized proof. *Id.* at 515–16, 95 S.Ct. at 2213–14. In contrast, the Court noted that

---

**1.** The statute requires, *inter alia,* that SLA's: insure that such committee's responsibilities include (A) participation, with the State agency, in major administrative decisions and policy and program development, (B) receiving grievances of blind licensees and serving as advocates for such licensees, (C) participation, with the State agency, in development and administration of a transfer and promotion system ... (D) participation, with the State agency, in developing training and retraining programs, and (E) sponsorship, with the State

agency, of meetings and instructional conferences for blind licensees.
20 U.S.C. § 107b–1.

**2.** Organizations may sue on their own behalf when the organization itself satisfies the standing analysis ordinarily applied to individuals. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982). The *Hunt v. Washington Apple* analysis differs because the association sues not for injuries it has suffered, but to remedy the injuries of its members.

the plaintiff in *Hunt v. Washington Apple* had standing where no monetary damages were sought and thus no individualized proof was required. 432 U.S. at 344, 97 S.Ct. at 2442; *accord Telecommunications Research & Action Center v. Allnet Communication Services, Inc. (TRAC)*, 806 F.2d 1093 (D.C.Cir.1986). That principle is applicable here. Plaintiffs have not rebutted the defendants' argument that individual participation is required because monetary relief is sought, and the amount that each vendor is entitled to recover is different. The plaintiff organizations do not have standing to represent their members in their claims for monetary relief. However, the plaintiff organizations have standing to challenge the defendant's conduct where the remedy sought is not monetary in nature. *See Randolph–Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 99–100 (granting standing to organizational plaintiffs to protect the rights of their members).

### 2. *Exhaustion of administrative remedies*

■ Defendants argue that resort to arbitration is mandatory under the Randolph–Sheppard Act. In *Randolph–Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 100–111, (D.C.Cir.1986), the D.C. Circuit concluded, after a lengthy analysis, that vendors were required to exhaust their administrative remedies under the Act. Plaintiffs argue that they are exempt from the exhaustion requirement because resort to the administrative process would be futile. Plaintiffs rely on a recent District of Columbia Superior Court decision, *Shank v. Williams*, No. 1164–85 (July 16, 1987) (Wagner, J.). In *Shank*, the

Superior Court held that the plaintiff, a blind vendor, was not required to first seek relief by the statutory procedures because the District of Columbia did not provide an adequate forum for an evidentiary hearing.

The Randolph–Sheppard Act provides that SLA's shall provide dissatisfied vendors with "an opportunity for fair hearing." 20 U.S.C. § 107b(6). Grievances not resolved at the hearing are to be submitted to an arbitration panel convened by the Secretary of Education. *Id.* § 107d–1(a). Hearing procedures of D.C. agencies must be formulated in accordance with the D.C. Administrative Procedures Act. *See* D.C. Code § 1–1501 *et seq.* The D.C. APA requires notice-and-comment rulemaking, except in emergencies. *Id.* § 1–1506. Emergency procedures for evidentiary hearings were published by DCRSA in the D.C. Register on March 24, 1982; the force and effect of the procedures expired 120 days later, on July 22, 1982, in accordance with the D.C. APA. *Shank v. Williams*, slip op. at 8. The District of Columbia has yet to promulgate hearing procedures in accordance with the D.C. APA.[3] Defendants argue that evidentiary hearings are available pursuant to the Randolph–Sheppard Act under the auspices of the D.C. Office of Fair Hearings. However, Judge Wagner explicitly rejected this same argument in *Shank* on the ground that the decision to use the Fair Hearings Office was itself a rulemaking decision requiring notice.[4] *Id.* at 9–10. Judge Wagner reasoned that "[a]bsent compliance with the notice and publication requirements, no administrative procedure for an evidentiary hearing existed which had any legal effect." *Id.* at 10

3. The D.C. regulations pertaining to the blind vendors program provide that hearing procedures under the Randolph–Sheppard Act "shall be published separately by the Department." 29 DCMR 2–11, Public Welfare § 215.4 (Sept.1985). The day before oral argument on this motion, defendants filed a notice explaining that proposed regulations were published in the D.C. Register on August 19, 1988. DCRSA estimates that final regulations will be issued on approximately October 14, 1988. The Court will not require the plaintiffs to further delay resolution of their claims while defendants promulgate rules that should have been promulgated in

1974, were improperly established in 1982, and were found to be inadequate more than a year ago.

4. The D.C.Code defines "rule" as:

the whole or any part of any Mayor's or Agency's statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or to describe the organization, procedures, or practice requirements of the Mayor or any agency.

D.C.Code § 1–1502(6).

(citing D.C.Code § 1–1538(b)). Judge Wagner had good reason to hold that a hearing before the Fair Hearing Office would not be legally binding: prior to suing in Superior Court, the plaintiff in *Shank* had an evidentiary hearing before the Fair Hearing Office, received a favorable decision, and was subsequently "informed by the Chief of the Fair Hearings and Regulations Division that the decision was not binding and enforceable because of a lack of jurisdiction." *Id.*

Defendants argue that *Randolph–Sheppard Vendors*, not *Shank*, is the controlling precedent here because the Court must interpret a federal statute. *Randolph–Sheppard* is clearly authoritative for the proposition that the Randolph–Sheppard Act requires exhaustion. But the court in *Randolph–Sheppard* did not foreclose the possibility that the administrative procedure might be futile. The analysis of Judge Wagner was not considered by the D.C. Circuit.[5] In fact, that opinion left the door open for the issue presented here. In *Randolph–Sheppard Vendors*, the court noted that the futility exception applies when "the agency charged with arbitration has indicated that it does not have jurisdiction over the dispute". 795 F.2d at 105–106, 104 n. 21. The Office of Fair Hearing has, at least on one occasion, indicated that it does not have jurisdiction to conduct a hearing. Even more importantly, the Department of Education has made clear that it will not entertain arbitration requests from vendors in the District of Columbia in light of the absence of a procedure for fair hearings. A letter from Acting Commissioner Frank Corrigan explains:

> "the District of Columbia Superior Court decision correctly concludes that Federal arbitration is not available to the vendors under the unique circumstances presented in the District. The Department has no choice but to ... decline to entertain direct arbitration requests from District vendors until local hearing procedures have been promulgated."

Exhibit J, Humphrey Affidavit, Letter to Humphrey from Corrigan, dated Jan. 19, 1988. By comparison, in *Randolph–Sheppard Vendors* the D.C. Circuit noted that "the Secretary of Education did not disclaim jurisdiction over the controversy." 795 F.2d at 107. The Court finds this to be a compelling case for invoking the futility exception to the exhaustion doctrine because resort to administrative remedies would be useless.

3. *Availability of a remedy for monetary damages under Randolph–Sheppard*

■ Defendants contend that the Randolph–Sheppard Act does not create a private right of action for money damages. Plaintiffs argue that retroactive money damages are proper because of the contractual nature of the arrangements that the statute creates. The statute allows SLA's to participate in the program after they promise to adhere to the requirements of the Act. *See* 20 U.S.C. § 107b. In return, the federal government allows the SLA to establish vending facilities on federal property. The SLA, in turn, licenses blind vendors and signs contracts that set out the responsibilities of both the vendor and the SLA. *See* Exhibit K, Humphrey Affidavit (sample DCRSA contract). The contracts between the blind vendors and DCRSA contain most of the terms that plaintiffs allege DCSLRA has violated. Plaintiffs argue that this contract between the vendors and the District establishes a basis for money damages.

A Third Circuit case strongly supports plaintiffs' position. In *Delaware Department of Health and Social Services v. Department of Education*, 772 F.2d 1123 (3d Cir.1985), the court held that an arbitration panel's award of money damages in favor of a blind vendor against Delaware was binding. The Third Circuit's analysis was grounded on the following logic: the Randolph–Sheppard Act requires states to submit to arbitration; awards of monetary damages in arbitration are commonplace, a

---

5. Defendants contend that *Shank* was wrongly decided because Judge Wagner incorrectly applied the D.C. APA. The D.C. APA is a local statute, and this Court is not inclined to overturn an interpretation of a District of Columbia statute by a District of Columbia court.

fact Congress was well aware of; therefore, arbitrators are authorized to award compensatory damages against states. *Id.* at 1136–37. The court also concluded that "the relationship between the blind vendor and the state, like conventional employment relationships, is essentially contractual." *Id.* at 1136. Defendants reply that *Delaware Department of Health* was wrongly decided. They contend that nowhere in the contracts between the District of Columbia and the federal government and between the District of Columbia and the blind vendors is there any explicit reference to monetary remedies.[6] The Court concurs with the analysis in *Delaware Department of Health:* plaintiffs' claims are grounded in their contractual relationship with the defendants or their status as beneficiaries of contracts between the defendants and the United States. Since the Act is intended to benefit vendors, it would be incongruous to hold that the Act limits the contractual remedies otherwise available to blind vendors.

### 4. *Challenge to DCRSA's allocation of funds*

■ Defendants argue that plaintiffs' allegations about expenditure of funds, including the award of contracts, are not proper because agencies have sole discretion to allocate resources as they see fit. *See Wisconsin v. FPC,* 373 U.S. 294, 313–14, 83 S.Ct. 1266, 1276–77, 10 L.Ed.2d 357 (1963); *Heckler v. Chaney,* 470 U.S. 821, 831–32, 105 S.Ct. 1649, 1655–56, 84 L.Ed.2d 714; *National Congress of Hispanic American Citizens v. Marshall,* 626 F.2d 882, 889 (D.C.Cir.1979). Plaintiffs argue that the principle does not apply because the money being spent is largely the vendors', not the public's. Prior to 1984, nearly all of the funding for DCRSA came from set aside levies imposed on vendors. The vendor levy has accounted for approximately 45% of program income annually since 1984.

This case is not governed by the principle enunciated in *Wisconsin v. FPC.* Nearly all of plaintiffs' allegations with regard to the allocation of funds are not that DCRSA should reallocate resources, but that DCRSA should repay monies taken from plaintiffs, and cease paying monies to contractors and others in violation of the statute. The balance of plaintiffs claims regarding the allocation of resources are principally that DCRSA cannot account for resources passing through it, despite the Act's mandate that it do so. *See* 20 U.S.C. § 107b–1(1). Moreover, the Randolph–Sheppard Act specifically provides that plaintiff CBV is to participate "in major administrative decisions and policy and program development." *Id.* § 107b–1(3). This strongly suggests that plaintiffs can challenge both their exclusion from the policymaking process and the policies that were formulated in their absence.

### 5. *Statute of Limitations*

The Randolph–Sheppard Act does not include a statute of limitations. In the District of Columbia, there is a three-year stat-

---

**6.** Defendants argue that the fact that states cannot be sued under the Randolph–Sheppard Act is evidence that Congress did not intend to create a private right of action under the Act. The Eleventh Amendment, of course, bars federal jurisdiction to entertain suits against states for monetary relief. *Welch v. Texas Dept. of Highways and Public Administration,* — U.S. —, 107 S.Ct. 2941, 2948, 97 L.Ed.2d 389 (1987); *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). States can waive their immunity by participating in a federal program that conditions state participation on consent to suit in a federal forum. *See Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

It is not clear whether states waive their immunity by participating in the Randolph–Sheppard Act program. In *Delaware Department of Health,* the third circuit held that Delaware waived any immunity it might have had from paying monetary damages awarded by an arbitrator because it agreed to submit to arbitration when it participated in the program. 772 F.2d at 1138; *contra Georgia Dept. of Human Resources v. Bell,* 528 F.Supp. 17, 26 (N.D.Ga.1981) (holding that the Randolph–Sheppard Act does not waive states' immunity). But the Eleventh Amendment does not apply to the District of Columbia and the possibility that states cannot be sued under Randolph–Sheppard does not mean that the Act forecloses remedies that blind vendors would otherwise have.

ute of limitations for actions not otherwise prescribed. D.C.Code § 12–301. Defendants argue that this three-year statute applies, barring all claims based on actions that occurred prior to January 21, 1985, three years prior to the filing of this claim. Plaintiffs contend that the remedies in the Randolph–Sheppard Act are not limited by the local statute of limitations because to do so would be inconsistent with the underlying policy of the statute. *See Marshall v. Intermountain Elec. Co.,* 614 F.2d 260 (8th Cir.1980); *Occidental Life Ins. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). Defendants reply that applying the statute of limitations would not defeat the purpose of the Act, and point to one Randolph–Sheppard Act case in which a state statute of limitations was applied. *See Almond v. Boyles,* 612 F.Supp. 223, 228 (D.N.C.1985) (applying state statute of limitations and "continuing wrong" doctrine), *aff'd in relevant part,* 792 F.2d 451, 456 (4th Cir.1986), *cert. denied* 479 U.S. 1091, 107 S.Ct. 1302, 94 L.Ed. 2d 157 (1987). In light of arguments made at the hearing on this motion regarding estoppel, the Court declines to rule on this aspect of defendant's motion until further briefing has been completed in accordance with the Court's order of September 28, 1988.

### B. Motion for Class Action

Plaintiffs seek certification as a class to maintain this action. The proposed class consists of all blind vendors licensed to operate in the District of Columbia. Plaintiffs claim that they meet the requirements of Rule 23(a): numerosity, typicality, common questions, and adequate representation. The Court holds that these four requirements are satisfied.[7]

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). There are presently 63 blind vendors li-

censed to operate vending facilities in the District of Columbia. This same number of class members was found to satisfy the numerosity requirement in *Bachman v. Collier,* 73 F.R.D. 300, 304 (D.D.C.1976). Another factor in determining if joinder is practical is whether members of the class would be able to pursue remedies on an individual basis. The relatively meager financial resources of the individual vendors countenances against requiring individual actions. The Court concludes that joinder is not a satisfactory alternative in this instance, and holds that plaintiffs have satisfied the numerosity requirement. Rule 23(a) also requires that there be "questions of law or fact common to the class." Fed. R.Civ.P. 23(a)(2). This case raises numerous questions of law and fact common to the class, and the Court holds that Rule 23(a)(2) has been satisfied.

The typicality prong of Rule 23(a) requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Fed.R. Civ.P. 23(a)(3). The claims of the representatives must "resemble or exhibit the essential characteristics of those of the representatives." *Kas v. Financial General Bankshares, Inc.,* 105 F.R.D. 453, 461 (D.D.C.1984). The Court holds that the typicality requirement has been met. Plaintiffs assert claims based on statutory or contractual violations that are equally applicable to members of the proposed class.

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R.Civ.P. 23(a)(4). The Court must find that the representative has no conflict of interest with the class members, and that the representative is able "to vigorously prosecute the interests of the class through qualified counsel." *National Ass'n of Region-*

---

7. Because the Court concludes that the individual plaintiffs satisfy Rule 23, it need not consider whether the organizational plaintiffs are also qualified members of the class. *See* Wright, Miller & Kane, *Federal Practice and Procedure* § 1761. But the Court notes that although organizations do not ordinarily qualify as representatives under Rule 23(a), "a number of courts

have recognized an exception to the rule preventing the organization from suing if the association has specific authority or has been created especially to protect the particular interest of the members that is involved." *Id.* § 1761 at 147. Thus, plaintiff CBV might well be able to represent the class even in the absence of a qualified individual representative.

*al' Medical Programs v. Mathews,* 551 F.2d 340, 345 (D.C.Cir.1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977). The individual representatives are the elected leaders of the business associations to which all or most of the proposed class belong. They contend that they have informally contacted many members of the class and have their authority to bring this action. Under these circumstances, individual plaintiffs are clearly adequate representatives. *See* Wright, Miller & Kane, *Federal Practice and Procedure* § 1765. Plaintiffs' counsel appears to be qualified, and has not been challenged by defendants.

A class action is maintainable under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [ ] a class action is superior to other available methods." Fed. R.Civ.P. 23(b)(3). The Rule sets out four pertinent factors to consider when making the above determination:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already commenced ...;
>
> (C) the desirability or undesireability of concentrating the litigation of the claims in the particular forum;
>
> (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

All four of these factors favor the maintenance of this action as a class action. Plaintiffs contend that the individual members of the class have no interest in bringing individual actions. The Court is not aware of any ongoing litigation concerning the same issues plaintiffs have raised. It would be highly desirable to concentrate the litigation in one forum so that one court can evaluate the defendants' compliance with their statutory obligations. Finally, the relatively few members of the class, and the class-wide nature of the allegations, make this a manageable class action, especially by comparison to other joinder devices.

Defendants argue that individual issues predominate over common questions if monetary damages are awarded. They suggest that some of the claims, if successful, would result in recovery by some vendors but not others. For example, defendants claim that if vending income is recovered, it is unclear whether the income should go to the vendors operating the particular machines or to the vendors as a whole (*e.g.,* into the pension fund). But plaintiffs' proposed method for allocating funds recovered suggests that any potential conflict will be avoided. Plaintiffs propose to distribute money damages in a manner which reflects the class members' right to recover. Recovered set-aside levies will be distributed pro rata based on the members' payment of levies. Unassigned vending machine income will be paid into the pension fund, and assigned vending machine income will, of course, be paid to the member operating the particular machine.

Defendants also contend that the interests of the plaintiffs are adverse because the relief may favor some members over others. For example, the promotions policy promulgated by DCRSA is challenged; a change in policy might benefit some members at the expense of others. But the complaint alleges that a new promotions policy is needed because the current one is not "clearly enunciated or implemented." Complaint ¶ 20. Thus, the relief requested would benefit all plaintiffs, not some at the expense of others. This same point is true for almost all facets of the case. The thrust of the complaint is that the defendants are not complying with the Randolph–Sheppard Act; plaintiffs are not seeking a reordering of benefits as much as the establishment of some order in the first place. With one exception, every allegation in the complaint is common to all members of the class.[8] A determination on

---

8. The one allegation that will obviously not apply to all members of the class is the claim that the defendants have wrongfully allowed sighted vendors to operate cafeterias. Only a few mem-

these common statutory questions will further the interest of judicial economy and assist in the prompt and economical resolution of the class members' claims. The Court concludes that a 23(b)(3) class action is appropriate.

bers of the class could benefit from a reversal of this policy, since only a few could replace the sighted vendors. For the time being, this cause of action will be retained in the class action because of the common questions presented.