## COMMITTEE OF BLIND VENDORS OF the DISTRICT OF COLUMBIA, et al., Appellees,

v.

## DISTRICT OF COLUMBIA, et al., Appellants.

### Nos. 90–5280 and 92–5059.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 14, 1993.

Decided July 5, 1994.

Rehearing and Suggestion for Rehearing In Banc Denied Sept. 15, 1994.*

---

* Mikva, Chief Judge, did not participate in this matter; Buckley, Circuit Judge, would grant the petition for rehearing.

James C. McKay, Jr., Asst. Corp. Counsel, Washington, DC, argued the cause for the appellants. On brief were John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC.

Robert R. Humphreys, Washington, DC, argued the cause for the appellees.

Before BUCKLEY, GINSBURG and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

Dissenting opinion filed by Circuit Judge BUCKLEY.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The District of Columbia (District) appeals the district court's decision awarding the plaintiff class compensatory damages and attorney's fees for the District's alleged violations of the Randolph–Sheppard Act (Act), 20 U.S.C. §§ 107 *et seq.* The District argues that the district court was without jurisdiction because the class failed to exhaust its administrative remedies and exhaustion would not have been futile. The District also challenges the damages and attorney's fees awards. For the reasons set forth below, we reverse the judgment below and remand with instructions to dismiss the action.

## I.

Congress enacted the Act in order to provide the blind with employment, to increase their economic opportunities and to encour-age their economic self-sufficiency. 20 U.S.C. § 107(a). The Act achieves these goals by authorizing blind persons to operate vending facilities on federal property and by granting blind vendors licensed under the Act priority in the operation of the facilities. 20 U.S.C. §§ 107(a)–(b). The Act further benefits blind vendors by entitling them to a percentage of all income generated by vending machines operating on federal property whether or not the machines are operated by program participants. 20 U.S.C. § 107d–3.

State and federal agencies share responsibility for administering the statutory program. On the federal level, the Secretary of the United States Department of Education (Secretary) is responsible for interpreting and enforcing the Act's provisions. In addition, the Secretary designates a state licensing agency (SLA) to administer the Act within each state. 20 U.S.C. § 107a(a)(5).

Blind persons interested in participating in the program must apply to their SLA for a license to operate as a blind vendor. 20 U.S.C. § 107a(b). The SLA then applies to the federal government seeking to place the licensee on federal property. 20 U.S.C. § 107a(c). When the SLA and the federal government have agreed on a suitable location for the vending facility, the SLA equips the facility and furnishes the initial stock and inventory. 20 U.S.C. § 107b(2). From this point forward, the blind vendor operates as the sole proprietor of the vending facility. He is entitled to its profits and presumably absorbs its losses. *See* 20 U.S.C. § 107d–3 (income from licensee's vending machine accrues to licensee).

The Act sets forth a grievance procedure for blind vendors. "Any blind licensee who is dissatisfied with any action arising from the operation or administration of the vending facility program" can request a full evidentiary hearing before his SLA. 20 U.S.C. § 107d–1(a). If he is dissatisfied with the results of the hearing, he can file a complaint with the Secretary who then convenes an ad hoc arbitration panel to address the grievance. *Id.* The arbitration panel's decision is binding and subject to judicial review as final agency action under the Administrative Procedure Act (APA). 20 U.S.C. § 107d–2(a).

The Act further protects the vendors by requiring each SLA to establish a Committee of Blind Vendors (CBV), elected biennially by all vendors and responsible for representing them, addressing their grievances and acting as their advocate. 20 U.S.C. § 107b–1.

## II.

The SLA for the District of Columbia [1] is the District of Columbia Rehabilitation Services Administration (DCRSA), a subdivision of the District's Department of Human Services. On October 23, 1985, CBV and several individual blind vendors filed a grievance with DCRSA complaining of the District's mismanagement of the Randolph–Sheppard program. DCRSA requested that the District of Columbia Office of Fair Hearings (OFH) [2] conduct an evidentiary hearing on the vendors' grievance. *Committee of Blind Vendors v. District of Columbia,* 695 F.Supp. 1234, 1237 (D.D.C.1988). The OFH scheduled the hearing for September 2, 1987.[3]

While the vendors' grievance was pending, the District of Columbia Superior Court decided *Schlank v. Williams,* No. 1164–85 (D.C.Super.Ct. July 16, 1987). In *Schlank,* an aggrieved vendor sought injunctive relief and a declaratory judgment under the Act. The District moved to dismiss based on the plaintiff's failure to exhaust her administrative remedies. *Schlank,* slip op. at 6. The court disagreed, concluding that exhaustion would have been futile. The court relied on two factors: (1) DCRSA had failed to comply with the rulemaking procedures of the District of Columbia Administrative Procedure Act, which in turn meant that it had not

properly adopted procedures to govern Randolph–Sheppard hearings as it was required to do under the Act,[4] and therefore a DCRSA hearing could not have provided effective relief; and (2) the OFH's jurisdiction does not extend to vendor grievances. *Id.* at 7–11.

Based on the D.C. Superior Court's decision in *Schlank,* the vendors concluded that their hearing before the OFH would not result in enforceable relief. Accordingly, they obtained an indefinite continuance of their case and attempted to progress to the next level of the grievance process by requesting arbitration before a panel convened by the Secretary. The Acting Commissioner of the Department of Education (Department) informed the vendors that arbitration was available only to vendors dissatisfied with the results of a DCRSA hearing. According to the Acting Commissioner, because the vendors had not aired their grievances before DCRSA, they could not request arbitration. He further explained:

> . . . Federal arbitration is not available to the vendors under the unique circumstances presented in the District. The Department has no choice but to . . . decline to entertain direct arbitration requests from District vendors until local hearing procedures have been promulgated.

(reproduced in *Committee of Blind Vendors,* 695 F.Supp. at 1234).

Concluding that neither a legally sufficient DCRSA hearing nor arbitration was available, the CBV and several individual blind vendors ("plaintiff class" or "class") began a

---

1. Under the Act, the District of Columbia is treated as a state. 20 U.S.C. § 107e(6).

2. The OFH hears grievances of applicants for, and recipients of, public assistance. The statute defines "public assistance" as "payment in or by money, medical care, remedial care, goods or services to, or for the benefit of, needy persons." D.C.Code § 3–201.1.

3. The OFH delayed the hearing for two years, awaiting the completion of audits of the program. *Committee of Blind Vendors v. District of Columbia,* 695 F.Supp. 1234, 1237 (D.D.C.1988).

4. The Secretary promulgated regulations in 1977 requiring that "[t]he State licensing agency shall specify in writing and maintain procedures

whereby such agency affords an opportunity for a full evidentiary hearing" to aggrieved blind vendors. 34 C.F.R. § 395.13. The District of Columbia Administrative Procedure Act, D.C.Code §§ 1–1501 *et seq.,* sets forth rulemaking procedures for its agencies, which procedures DCRSA had to follow to comply with 34 C.F.R. § 395.13. In 1982, DCRSA published emergency procedures to govern evidentiary hearings under the Act. The procedures expired 120 days later. *Schlank v. Williams,* slip op. at 8. Five years later, when the D.C. Superior Court decided *Schlank v. Williams,* DCRSA had yet to promulgate procedures for Randolph–Sheppard Act hearings.

class action in the United States District Court for the District of Columbia, alleging that the District, through DCRSA and other District agencies, mismanaged the Randolph–Sheppard program in a number of ways. The class sought compensatory damages as well as a writ of mandamus compelling the District to comply with the Act's requirements. Joint Appendix (J.A.) at 17.

The District moved to dismiss the plaintiff class's action or, in the alternative, for summary judgment. The District argued, *inter alia,* that the court was without jurisdiction because the plaintiff class had not exhausted its administrative remedies. The court rejected the District's exhaustion argument, stating that "[t]he Court finds this to be a compelling case for invoking the futility exception to the exhaustion doctrine because resort to administrative remedies would be useless." *Committee of Blind Vendors v. District of Columbia,* 695 F.Supp. 1234 (D.D.C.1988).

After a five-day bench trial, the court awarded the plaintiff class both compensatory damages and attorney's fees. *Committee of Blind Vendors v. District of Columbia,* 736 F.Supp. 292, 310–11, 317 (1990). The court denied the requested mandamus relief. *Id.* at 317. Subsequently, the District moved to alter or amend the judgment and the district court denied the motion.

On appeal the District makes the same jurisdictional challenge as well as a challenge on the merits regarding the damages and attorney's fees awards. We now reverse the judgment below.

### III.

We first address the exhaustion issue because of its jurisdictional nature. *See Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). The premise of the exhaustion doctrine is "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). The doctrine benefits administrative agencies by: (1) affording them the opportunity to apply their expertise and exercise their discretion; (2) giving them the opportunity to correct their own errors without judicial intervention; and (3) discouraging "frequent and deliberate flouting of administrative processes." *See McKart v. United States,* 395 U.S. 185, 194–95, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969). Likewise, the doctrine benefits the courts. Requiring exhaustion can preserve judicial resources by obviating the need for judicial review. As the Supreme Court explained in *McKart,* "A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene." *Id.* at 195, 89 S.Ct. at 1663. Even if the court eventually reviews the agency's decision, requiring exhaustion simplifies the court's task by providing it with a factual record developed by the agency. *Id.* at 194, 89 S.Ct. at 1663.

The class argues—and the district court held—that exhaustion would have been futile because at the time it filed its complaint in district court neither DCRSA nor the Department was able to provide the vendors with the grievance procedure set forth in the Act. We need not decide whether the futility exception to the exhaustion doctrine applied here at the time the complaint was filed, however, because we believe that the district court abused its discretion by retaining jurisdiction after properly promulgated administrative procedures were in place and the case was not nearly ready for trial; we therefore reverse its judgment.[5]

---

5. We have excused a plaintiff's failure to exhaust if "the reasons supporting the doctrine are found inapplicable." *Committee for GI Rights v. Callaway,* 518 F.2d 466, 474 (D.C.Cir.1975). Because the purposes undergirding the doctrine are not furthered when "following the administrative remedy would be futile because of the certainty of an adverse decision," we have made an exception to its application upon a showing of futility.

*Randolph–Sheppard Vendors of America v. Weinberger,* 795 F.2d 90 (D.C.Cir.1986). The futility exception is, however, quite restricted. *See id.* at 106 (futility exception applicable only if administrative remedies are "clearly useless"); *Peter Kiewit Sons' Co. v. United States Army Corps. of Eng'rs,* 714 F.2d 163, 168–69 (D.C.Cir.1983) (exhaustion requirement waived in "only the most exceptional circumstances").

■ At the outset, it is important to note that this case is not governed by the APA. The APA *would have* governed the case if the plaintiff class had challenged the decision of either DCRSA or the Secretary's arbitration panel. Instead, the plaintiff class seeks relief based on DCRSA's alleged misadministration of the Randolph–Sheppard program. But the APA does not apply to common-law causes of action against an agency. By its terms, the APA grants a person aggrieved by agency action the right to *judicial review* thereof. 5 U.S.C. § 702. Here the APA is inapplicable because no agency proceeding took place for the court to review. Because this case is not governed by the APA (or any other statute requiring exhaustion), the exhaustion doctrine applies only "as a matter of judicial discretion." *Darby v. Cisneros*, —— U.S. ——, ——, 113 S.Ct. 2539, 2548, 125 L.Ed.2d 113 (1993).[6] Although the question is a close one, as it usually is when we review a district court's exercise of discretion, the circumstances presented to the district court, together with the unmistakable intent of Congress that the precise administrative machinery it put in place be used, combine to lead us to conclude that the district court abused its discretion in not requiring the plaintiff class to exhaust its administrative remedies once properly promulgated procedures were in place.

The plaintiff class filed its complaint in the district court on January 12, 1988. At that time, DCRSA had not adopted procedures to govern Randolph–Sheppard Act hearings as required by 34 C.F.R. § 395.13. On August 19, 1988, DCRSA published proposed procedures in the D.C. Register. The District filed a motion to dismiss the case, claiming, *inter alia,* that the plaintiff class failed to exhaust its administrative remedies. The district court denied the motion on September 28, 1988, citing the futility exception to the exhaustion requirement. The hearing procedures became effective December 9, 1988—eleven months after the plaintiff class filed its complaint but one year before trial. On December 18, 1989—the first day of trial—the District again informed the court as a preliminary matter that the procedures were in force and argued that the plaintiff class should be required to exhaust its administrative remedies. *See* Trial Transcript at 9. The court nevertheless allowed the case to proceed. Bearing in mind that the federal courts owe to the District of Columbia the comity extended to a state—as the District is considered under the Act—we believe the district court abused its discretion in allowing the case to go forward when the District had affirmatively removed the only basis on which futility had been argued. With the

---

We note, without deciding, that the D.C. Superior Court's decision in *Schlank v. Williams* does not seem to control the application of the futility exception here. The OFH did not refuse to hear the plaintiff class's grievance—the class itself chose not to pursue the hearing because of the *Schlank* decision. Moreover, it appears that the D.C. Court of Appeals would disagree with the Superior Court's interpretation of the D.C. Administrative Procedure Act as support for the plaintiff class's futility argument. *See Family Constr. v. District of Columbia Dep't. of Consumer & Regulatory Affairs,* 484 A.2d 250 (D.C.1984). There, the petitioner challenged the conduct of a hearing by a District agency on the ground that the agency had not promulgated rules of procedure to govern the hearing. In rejecting the argument, the court explained:

Where the conduct of an agency hearing is challenged and procedural rules have not been adopted by the agency, we review the hearing to determine if it was conducted in conformance with "well established rules of procedure generally applicable to agency adjudications." ... Here petitioner has not alleged any prejudice resulting from the manner in which the

hearing was conducted, and our review indicates that there would be no basis for such an assertion.

*Id.* at 255 n. 8 (internal citations omitted). Finally, even if no effective remedy was available to the class at the time it filed its complaint, a remedy was available before trial began.

6. The plaintiff class argues that the Supreme Court's decision in *Darby* renders exhaustion under the Act unnecessary. We disagree. In *Darby,* the Supreme Court held that a federal court cannot require a plaintiff to exhaust his administrative remedies before seeking judicial review under the APA unless the statute at issue or agency rules issued thereunder specifically require exhaustion as a prerequisite to judicial review. —— U.S. at ——, 113 S.Ct. at 2548. The Court limited its holding, however, by stating that "[o]f course, the exhaustion doctrine continues to apply as a matter of judicial discretion in cases not governed by the APA." *Id.* This case is not governed by the APA so the plaintiff class cannot rely on *Darby* to support its argument that exhaustion is unnecessary.

proper promulgation of hearing procedures, the plaintiff class had available to it an administrative remedy under the Act only eleven months into the pretrial period and a full year before trial commenced. Moreover, the district court could readily foresee the availability of an administrative remedy as it had notice from the District only eight months into the pretrial period that properly promulgated procedures would soon be available. Accordingly, it would have been more expeditious, as well as more in line with basic considerations of comity, for the district court to have dismissed the case at that time in favor of the administrative process.

Furthermore, the district court's decision to proceed with the trial denied DCRSA its intended role in resolving vendor grievances. As we have already held, the text of the Act manifests Congress's intent that aggrieved vendors pursue their administrative remedies before resorting to Article III adjudication. *Randolph–Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 101–04 (D.C.Cir. 1986). The inclusion of a detailed grievance procedure to resolve vendor disputes, 20 U.S.C. § 107d–1(a),[7] is the strongest evidence of Congressional intent on the subject. As we explained in *Weinberger*, "[i]t seems unlikely, after establishing a specific dispute resolution system and conditioning judicial review on a final agency action, that Congress contemplated that an aggrieved party could … circumvent the system and seek de novo determination in federal court." *Weinberger*, 795 F.2d at 103.

Despite the circumstances as they existed at the time the plaintiff class filed its complaint, the purposes behind the exhaustion doctrine are furthered by requiring exhaustion in this case. Giving DCRSA the opportunity to hold an evidentiary hearing on the plaintiff class's grievances provides it the opportunity to apply its expertise [8] and to correct its errors in administering the Act. Further, requiring the plaintiff class to exhaust discourages circumvention of the grievance procedure created by Congress. Finally, exhaustion benefits the court by providing DCRSA an opportunity to compile a factual record and by potentially removing the need for judicial review. We conclude that the plaintiff class was required to pursue its administrative remedies, once those remedies became available to it, before seeking to enforce the Act in district court and that the district court abused its discretion in excusing the failure to exhaust.

The District also challenges the court's authority under the Act to award compensatory damages and attorney's fees for deficiencies in the SLA's administration of the Act, as well as the sufficiency of the evidence to support the court's finding that the SLA provided "no appreciable services" to the blind vendors during the relevant period. As the jurisdictional issue is dispositive, we do not reach either of these challenges.

Because the plaintiff class was required under the Act to first allow DCRSA to address its grievances, the district court erred in exercising jurisdiction once legally sufficient procedures were in place for DCRSA to do so. Accordingly, we reverse the district court's award of compensatory damages and

7. 20 U.S.C. § 107d–1(a) provides:
    Any blind licensee who is dissatisfied with any action arising from the operation or administration of the vending facility program may submit to a State licensing agency a request for a full evidentiary hearing, which shall be provided by such agency in accordance with section 107b(6) of this title. If such blind licensee is dissatisfied with any action taken or decision rendered as a result of such hearing, he may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d–2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.

8. The grievance procedure set forth in the Act manifests Congress's intent that the SLA first apply its expertise in interpreting the Act. As discussed earlier, the procedure requires that an aggrieved vendor submit his initial grievance to the SLA. The procedure also provides an SLA dissatisfied with the federal government's compliance with the Act a mechanism to enforce its interpretation. *See* 20 U.S.C. § 107d–1(b) ("[W]henever any State licensing agency determines that any department, agency, or instrumentality of the United States that has control of the maintenance, operation, and protection of Federal property is failing to comply with the provisions of this chapter or any regulations issued thereunder … such licensing agency may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute.").

**136**

attorney's fees to the plaintiff class and remand to the district court with instructions to dismiss the action.

*So ordered.*

BUCKLEY, Circuit Judge, dissenting:

The majority finds that the district court abused its discretion in failing "to have dismissed the case . . . in favor of the administrative process," Majority Op. ("Maj. op.") at 135, because the District had adopted the necessary administrative procedures "only eleven months into the pretrial period and a full year before trial commenced." *Id.* The majority fails to note the amount of time that had elapsed since the vendors first tried to avail themselves of those procedures.

The vendors filed their grievance with the District of Columbia Rehabilitation Services Administration ("DCRSA") on October 23, 1985. Twenty-two months later, they sought an indefinite continuance because of the District of Columbia Superior Court's decision that the DCRSA could not provide effective relief due to its failure to properly adopt procedures to govern Randolph–Sheppard hearings. *See Schlank v. Williams,* Civ. No. 1164–85 (D.C.Sup.Ct.1987). At that point, the vendors concluded they would have to try the next level of the grievance process established by Congress. Therefore, on August 31, 1987, they asked the Department of Education's Commissioner of the Rehabilitation Services Administration ("RSA") for a legal opinion as to whether they could file a request for arbitration with the Secretary of Education. Plaintiffs' Opposition to Defendant's Motion to Dismiss, Civ. No. 88–0142, Appendix I.

Over four months later, on January 19, 1988, the Acting Commissioner of the RSA responded:

> [A] hearing at the State level is necessary before a complaint can be accepted for arbitration. We believe that the District of Columbia Superior Court decision [in *Schlank* ] correctly concludes that Federal arbitration is not available to the vendors under the unique circumstances presented in the District. The Department has no choice but to follow the dispute resolution

scheme established by Congress and decline to entertain direct arbitration requests from District vendors until local hearing procedures have been duly promulgated.

Plaintiffs' Opposition to Defendant's Motion to Dismiss, Civ. No. 88–0142, Appendix J. Their attempts to follow the congressional scheme thus stymied by the District's inaction, the vendors filed this lawsuit in the district court on January 21, 1988.

The District promptly moved to dismiss the complaint, citing plaintiffs' failure to exhaust their nonexistent administrative remedies. On September 28, 1988, the district court denied the motion, invoking the futility exception to the exhaustion doctrine. *Committee of Blind Vendors v. Dist. of Columbia,* 695 F.Supp. 1234, 1241 (D.D.C.1988). The court noted that the District had published proposed regulations in the D.C. Register on August 19, 1988, and that the DCRSA "estimat[ed] that final regulations will be issued on approximately October 14, 1988." *Id.* at 1239 n. 3. Nonetheless, the court stated that it would

> not require the plaintiffs to further delay resolution of their claims while defendants promulgate rules that should have been promulgated in 1974, were improperly established in 1982, and were found to be inadequate more than a year ago.

*Id.*

On December 18, 1989, the first day of the trial, the District notified the court that the regulations had been promulgated on December 9, 1988, and again moved for dismissal. Transcript of Oral Argument at 9. Exercising its discretion, the court decided to proceed with the trial. Today, four years and two months after the district court ruled in favor of the vendors—and nine years and eight months after they first filed their grievance with the DCRSA—this court concludes that the district court abused its discretion in so deciding. As a consequence, the vendors must once again seek recourse through the administrative process, with no assurance that that will be the end of the matter.

Under the circumstances, I cannot find that the district court abused its discretion in deciding that the District had dragged its feet too long and that the vendors were

entitled to a resolution of their grievance. To be sure, exhaustion of administrative remedies serves important purposes: It allows administrative agencies to exercise their discretion and expertise, it enables them to correct their own errors without judicial intervention, and it promotes judicial economy. *McKart v. United States,* 395 U.S. 185, 194–95, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969); *see also Randolph–Sheppard Vendors of America v. Weinberger,* 795 F.2d 90 (D.C.Cir.1986). I agree that Congress expected the agency's expertise to be invoked before this kind of a grievance would reach a court, *Weinberger,* 795 F.2d at 101–04; but it surely assumed that it would take the agency less than fourteen years to adopt the necessary procedures.

The majority believes that the subsequent promulgation of the procedures revived the vendors' obligation to pursue their administrative remedies. Maj. op. at 134. The district court's decision to proceed with the trial, however, will not subvert the policies undergirding the exhaustion rule. Those policies surely assume that the administrative procedures are in place, and they surely allow a court to consider the requirements of fairness to litigants who have been frustrated in their attempts to play by the rules. Because I feel the district court did not abuse its discretion in proceeding to trial, I dissent.