Blind Vendors v. NH                    CV-98-011-M   03/17/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>New Hampshire Committee</u>
<u>of Blind Vendors</u>,
     Plaintiff,

v.                                          Civil No. 98-011-M

<u>The State of New Hampshire, Department</u>
<u>of Administrative Services</u>,
     Defendant.


**O R D E R**


     The New Hampshire Committee of Blind Vendors ("CBV") brings this action seeking declaratory and injunctive relief against the New Hampshire Department of Administrative Services.  CBV claims that the State violated the provisions of the Surface Transportation Act, 23 U.S.C. § 101, et seq., by awarding contracts to operate vending facilities at highway rest areas without giving priority to blind vendors licensed by the State under the Randolph-Sheppard Act, 20 U.S.C. § 107, et seq.  The State moves to dismiss CBV's complaint, alleging, among other things, that CBV has failed to exhaust its administrative remedies.  Accordingly, it says that the court lacks subject matter jurisdiction.  <u>See</u> Fed. R. Civ. P. 12(b)(1).  CBV objects.


**Standard of Review**

     "When faced with a motion to dismiss for lack of subject matter jurisdiction, Rule 12 (b)(1), Fed. R. Civ. P., the party asserting jurisdiction has the burden to establish by competent

proof that jurisdiction exists." Stone v. Dartmouth College, 682 F. Supp. 106, 107 (D.N.H. 1988) (citing O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. 1982); C. Wright & A. Miller, 5 Federal Practice and Procedure § 1350, at 555 (1969 & Supp. 1987)). Unlike the situation presented with typical motions to dismiss (e.g., for failure to state a claim), however, the court "may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment." Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676 F. Supp. 399, 402 (D.N.H. 1987); see also Richmond, F & P R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) cert. denied, 503 U.S. 984 (1992); see also Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). Nevertheless, the court "should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Richmond, 945 F.2d at 768 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

## Discussion

I.  The Randolph-Sheppard Vending Stand Act.

Congress enacted the Randolph-Sheppard Vending Stand Act, 20 U.S.C. §§ 107-107f, to provide "blind persons with remunerative

2

employment, enlarg[e] the economic opportunities of the blind, and stimulat[e] the blind to greater efforts in striving to make themselves self-supporting." 20 U.S.C. § 107(a). To accomplish those goals, the Randolph-Sheppard Act grants priority to licensed blind vendors who wish to operate vending facilities on federal property. 20 U.S.C. § 107(b).

The Secretary of Education administers the Act at the federal level and designates state licensing agencies ("SLAs") to implement programs under the Act at the state level. In New Hampshire, that licensing agency is the Department of Education, Division of Vocational Rehabilitation Services.

In a recent opinion, the Court of Appeals for the District of Columbia Circuit described how the Randolph-Sheppard Act operates:

> Blind persons interested in participating in the program must apply to their SLA for a license to operate as a blind vendor. The SLA then applies to the federal government seeking to place the licensee on federal property. When the SLA and the federal government have agreed on a suitable location for the vending facility, the SLA equips the facility and furnishes the initial stock and inventory. From that point forward, the blind vendor operates as the sole proprietor of the vending facility. He is entitled to its profits and presumably absorbs its losses.

Committee of Blind Vendors v. District of Columbia, 28 F.3d 130, 131 (D.C. Cir. 1994) (citations omitted). See also Tenn. Dept.

3

of Human Serv. v. U.S. Dept. of Educ., 979 F.2d 1162, 1163-64 (6th Cir. 1992).

The Randolph-Sheppard Act also established an administrative grievance procedure, pursuant to which "any blind licensee who is dissatisfied with any action arising from the operation or administration of the vending facility program may submit to a State licensing agency a request for a full evidentiary hearing." 20 U.S.C. § 107d-1(a). If the vendor is dissatisfied with any decision rendered following such a hearing, he or she may file a complaint with the Secretary, who then convenes a panel to arbitrate the dispute. The decision of the arbitration panel is binding on the parties and subject to appeal under the provisions of the Administrative Procedures Act. 20 U.S.C. § 107d-2(a).

II. The Surface Transportation Act.

As part of the Surface Transportation Act (the "STA"), Congress authorized states to place vending facilities in rest and recreation areas located on federal rights-of-way along the interstate highway system. 23 U.S.C. § 111(b). Prior to the passage of section 111(b), no commercial establishments were permitted at those locations. Section 111(b) of the STA provides, in part, that:

> Such vending machines may only be operated by the State. In permitting the placement of vending machines, the State shall give priority to vending machines which are operated through the State licensing agency designated pursuant to section 2(a)(5) of the

4

Act of June 20, 1936, commonly known as the "Randolph-
Sheppard Act."

23 U.S.C. § 111(b) (emphasis supplied).  Unlike the Randolph-
Sheppard Act, however, the STA does not explicitly establish any
form of administrative grievance procedure for those who believe
they have an actionable claim under its provisions.

III. The Parties' Dispute.

CBV alleges that the State violated the provisions of the
STA when it awarded a vending contract to C.C. Vending, Inc.
(authorizing it to operate vending machines at certain interstate
rest areas) and failed to give priority to those vending machines
which CBV operates through the Department of Education.  CBV says
that because section 111(b) of the STA is the sole authority for
the operation of vending facilities on the interstate highway
system, and because the STA is silent as to an administrative
grievance procedure, it may pursue its claims under section
111(b) directly in this forum.[1]

The State, on the other hand, argues that before pursuing
any claims in this court regarding the operation of vending

---

[1]     Other than asserting that the administrative procedures
established under Randolph-Sheppard do not apply in this case,
CBV has not advanced any argument(s) that might support a claim
that it should be excused from those administrative procedures
(e.g., futility of an administrative proceeding, agency bias or
taint, unreasonable or prejudicial delay associated with the
administrative process, etc.).  See e.g., McCarthy v. Madigan,
503 U.S. 140, 146 (1992).

5

facilities on federal property, CBV must first exhaust its administrative remedies under the Randolph-Sheppard Act. Because CBV has failed to pursue those administrative remedies, the State says that this court lacks subject matter jurisdiction over CBV's claims.[2]

At issue here, then, is whether a party who alleges that the State violated its rights under section 111(b) of the STA may pursue that claim directly in federal court or whether it must first comply with the administrative grievance procedure established under the Randolph-Sheppard Act. No federal court appears to have addressed the issue and, unfortunately, neither the STA itself nor its legislative history provides much in the way of guidance. See, e.g., H.R. Rep. 97-555 (1982), reprinted in 1982 U.S.C.C.A.N. 3639.

Nevertheless, it seems apparent that Congress intended the provisions of section 111(b) of the STA to be enforced through the administrative grievance procedure established under the Randolph-Sheppard Act. First, the language of the Randolph-Sheppard Act supports the view that all disputes concerning the State's administration of the vending program must be submitted to arbitration before they may be considered by a federal court.

_____

[2] Parenthetically, the court notes that the State also claims that the Eleventh Amendment precludes any award of monetary damages. At a minimum, that issue is open to debate. See, e.g., Premo v. Martin, 119 F.3d 764, 769-70 (9th Cir. 1997), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3298 (1998).

6

As noted above, the Randolph-Sheppard Act specifically provides that, "any blind licensee who is dissatisfied with any action arising from the operation or administration of the vending facility program" may avail itself of the grievance procedure. 20 U.S.C. § 107d-1(a) (emphasis supplied). See also 34 C.F.R. 395.13(a). It would be difficult to argue that CBV's claims against the State "arise from" anything other than the State's alleged failure to properly administer the vending facility program and its apparent failure to afford priority to CBV with regard to the operation of vending machines at interstate highway rest areas.

It is equally important to note that section 111(b) of the STA merely authorizes states to operate vending facilities in places under federal control where formerly such facilities were not permitted. Beyond that, the statute simply obligates states to afford priority to licensed blind vendors as a condition precedent to exercising the right to place vending machines at federal rest areas. The statute implicitly adopts the regulatory and administrative scheme established by the Randolph-Sheppard Act as the means for insuring that the priority intended for licensed blind vendors is actually extended by the state. As the Court of Appeals for the Eleventh Circuit observed:

> Section 111(b) is merely a delegating statute,
> generally granting to individual states the authority
> to "permit the placement of vending machines in rest
> and recreation areas, and in safety rests areas,
> constructed or located on rights-of-way on the

7

> Interstate System in such State." Should an individual
> state decide to allow placement of vending machines at
> interstate rest areas, the statute then requires that
> state to give priority to vending machines operated
> through the state licensing agency designated pursuant
> to section 2(a)(5) of the "Randolph-Sheppard Act."

Sentinel Communications Co. v. Watts, 936 F.2d 1189, 1196 (11th Cir. 1991).

It would be illogical to presume that Congress intended section 111(b) to create a singularly unique category of vending facilities to be operated by blind vendors (i.e., those at federal rest areas) and vest in operators of those facilities a similarly unique direct cause of action in federal district court. A far more reasonable conclusion is that Congress intended state-licensed blind vendors to pursue their right to priority when it comes to operating vending facilities at federal sites, regardless of location, through the administrative process established under Randolph-Sheppard. Nothing in the STA suggests that while state-licensed blind vendors must pursue the administrative process if they have been wrongfully denied priority in operating a vending facility in a federal post office, they are nevertheless free to bring a direct claim in federal court if they are denied priority in operating a similar vending facility at an interstate highway rest area.

Section 111(b) of the STA merely broadens the list of federal locations at which licensed blind vendors are to be given

priority in the operation of vending facilities, by adding to that list rest and recreation areas situated along the interstate highway system. It does not otherwise alter or augment the rights of blind vendors under the Randolph-Sheppard Act. Accordingly, the court concludes that blind vendors aggrieved by conduct of the State in connection with the awarding of contracts to operate vending facilities at interstate rest areas must pursue the administrative remedies afforded under the Randolph-Sheppard Act before seeking relief in federal district court.

Because CBV has yet to exhaust those administrative remedies, its suit is premature. See Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938) (holding that there is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."); see also Fillinger v. Cleveland Soc. for the Blind, 587 F.2d 336, 338 (6th Cir. 1978) ("Congress' decision to provide administrative and arbitration remedies for aggrieved blind vendors clearly evidences a policy judgment that the federal courts should not be the tribunal of first resort for the resolution of such grievances. Rather, congressional policy as reflected in the 1974 amendments is that blind vendors must exhaust their administrative and arbitration remedies before seeking review in the district courts.").

9

Finally, even if it were persuaded that Congress had not specifically mandated exhaustion under these circumstances, the court would, in the exercise of its discretion, require CBV to exhaust its administrative remedies before seeking judicial intervention.  See e.g., McCarthy v. Madigan, 503 U.S. 140, 144 (1992) ("Of 'paramount importance' to any exhaustion inquiry is congressional intent.  Where Congress specifically mandates, exhaustion is required.  But where Congress has not clearly required exhaustion, sound judicial discretion governs.") (citations omitted).  See also, Christopher W. v. Portsmouth School Committee, 877 F.2d 1089, 1094 (1st Cir. 1989) (noting that the exhaustion doctrine "enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy.").

Pursuant to the Randolph-Sheppard Act, the State is required to establish a comprehensive administrative process specifically designed to address, among other things, the particular type of claim CBV raises (e.g., that the State, through one of its agencies, has failed to give it priority in the operation of vending facilities).  See, e.g., Middendorf v. U.S. General Services Admin., No. 96-35077, 1996 WL 442512 (9th Cir. August 5, 1996) (holding that blind vendor cannot pursue claims against GSA in federal court until she has first exhausted administrative

remedies under Randolph Sheppard); <u>Morris v. State of Maryland</u>, No. 89-1013, 1990 WL 101396 (4th Cir. July 11, 1990) (holding that before suing the State of Maryland for alleged violations of Randolph-Sheppard, plaintiffs must first exhaust their administrative remedies). At least in the first instance, CBV should attempt to resolve its claim through that process.

## Conclusion

If its allegations are true, CBV certainly appears to have a meritorious claim that the State, through its Department of Administrative Services, violated federal law when it awarded a contract to operate vending machines at rest areas along the federal interstate system <u>without</u> giving priority to blind vendors licensed by the Department of Education. Nevertheless, because CBV has yet to pursue its administrative remedies under the Randolph-Sheppard Act, its suit here is premature. And, even if the court were empowered to resolve the parties' dispute notwithstanding CBV's failure to pursue its administrative remedies, considerations of judicial economy and deference to agency expertise in this area, among other things, counsel in favor of requiring CBV to exhaust the administrative remedies available to it. Accordingly, defendant's motion to dismiss (document no. 3) is granted without prejudice.

11

**SO ORDERED.**

 

_____
Steven J. McAuliffe
United States District Judge

March 17, 1998

cc:  Derwood J. Haskell, Esq.
     Nancy J. Smith, Esq.