**ALABAMA DEPARTMENT OF REHABILITATION SER-VICES, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, et al., Defendants.**

**No. Civ.A. 01–T–27–N.**

United States District Court, M.D. Alabama, Northern Division.

Aug. 9, 2001.

---

Stephen K. Simpson, Alabama Department of Rehabilitation Services, Montgomery, AL, for plaintiff.

Leura Garrett Canary, U.S. Attorney's Office, Montgomery, AL, Sheila M. Lieber, Carlotta P. Wells, U.S. Department of Justice, Federal Programs Branch, Civil Division, Washington, DC, Lisa A. Olson, Allison C. Giles, U.S. Department of Justice, Washington, DC, for defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Alabama Department of Rehabilitation Services (ADRS) brings this action against defendants United States Department of Veterans Affairs (VA), Veterans Canteen Service (VCS), and related federal entities and officials seeking injunctive relief and damages for alleged violations of the Randolph–Sheppard Act, 20 U.S.C.A. §§ 107–107f. Jurisdiction is proper under 28 U.S.C.A. § 1331 (federal question). Currently before the court are the ADRS's motion for a preliminary injunction, filed January 9, 2001, and the defendants' motion to dismiss, filed February 9, 2001.

Although the ADRS currently has pending two administrative actions for relief pursuant to the grievance procedures set forth under the Randolph–Sheppard Act, it petitions this court for several forms of injunctive relief to prevent continuing violations of the act during the pendency of the administrative review. For the reasons that follow, the court concludes that this matter is due to be dismissed because the court does not believe it should enter the relief sought by the ADRS. Accordingly, defendants' motion to dismiss will be granted, the ADRS's motion for preliminary injunction will be denied as moot.

## I. BACKGROUND

The ADRS brings before this court a long-standing dispute it has had with the VA, its officials, and related agencies, over the implementation of the Randolph–Sheppard Act on VA property in Alabama. This dispute has prompted the ADRS to file two administrative complaints against the defendants, one on June 19, 1998 (first arbitration) and another on October 20, 2000 (second arbitration). The first arbi-

tration was decided in favor of the ADRS, though the VA has not yet taken action on the panel's findings; the second arbitration panel has not yet convened. By way of background, the court will review, in brief, the purpose of the act, its administrative dispute resolution procedure, and the history of the dispute between the ADRS and the VA.

### A. The Randolph–Sheppard Act

The Randolph–Sheppard Act was enacted in 1936 to provide employment opportunities for the blind on federal property. The statute requires that federal agencies give "priority" to blind vendors when authorizing the operation of vending machines on federal property. *See* 20 U.S.C.A. § 107(b). Wherever feasible, federal agencies are to establish one or more vending facilities to be operated by the blind "to the extent that any such facility or facilities would not adversely affect the interests of the United States."

*Id.* A state government, through its state licensing agency designated pursuant to § 107a(a)(5), is responsible for licensing blind state residents as vendors under the act and, in conjunction with the relevant administrator of the federal property, negotiating applications for them to operate vending facilities. *See id.* at § 107a(b).

Although the Randolph–Sheppard Act applies to all federal agencies, responsibility for its interpretation, enforcement, and the resolution of disputes arising under it, rests with the Secretary of the United States Department of Education. The act contains a detailed administrative dispute resolution procedure.[1]

*See id.* at §§ 107d1–2. The procedure anticipates two types of disputes. A blind licensee "who is dissatisfied with any action arising from the operation or administration of the vending facility program" is entitled to a full evidentiary hearing by the state licensing agency. *See* 20

---

1. 20 U.S.C.A. § 107d–1 provides:

"(a) Hearing and arbitration
Any blind licensee who is dissatisfied with any action arising from the operation or administration of the vending facility program may submit to a State licensing agency a request for a full evidentiary hearing, which shall be provided by such agency in accordance with section 107b(6) of this title. If such blind licensee is dissatisfied with any action taken or decision rendered as a result of such hearing, he may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d–2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter."
"(b) Noncompliance by Federal departments and agencies; complaints by State licensing agencies; arbitration
Whenever any State licensing agency determines that any department, agency, or instrumentality of the United States that has control of the maintenance, operation, and protection of Federal property is failing to comply with the provisions of this chapter or any regulations issued thereunder (in-

cluding a limitation on the placement or operation of a vending facility as described in section 107(b) of this title and the Secretary's determination thereon) such licensing agency may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d–2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter."
Section 107d–2 establishes the composition of the arbitration panels to hear grievances brought under § 107d–1. Of particular relevance to this dispute between the ADRS (Alabama's designated state licensing agency) and a federal entity is § 107d–2(b)(2), which reads in relevant part:
"If the [arbitration] panel ... finds that the acts or practices of any such department, agency, or instrumentality are in violation of this chapter, or any regulation issued thereunder, the head of any such department, agency, or instrumentality shall cause such acts or practices to be terminated promptly and shall take such other action as may be necessary to carry out the decision of the panel."

U.S.C.A. § 107d–1(a). If the licensee remains "dissatisfied with any action taken or decision rendered as a result of such hearing," he may file a complaint with the Education Secretary, who shall submit the complaint to arbitration pursuant to § 107d–2. "Although subsection (a) entitles the vendor to invoke these procedures, ... it grants the blind vendor no substantive entitlement to any remedies." *Georgia Dept. of Human Resources v. Nash,* 915 F.2d 1482, 1488 (11th Cir.1990). The only right conveyed to a blind vendor under the Randolph–Sheppard Act is therefore the procedural one entitling him an opportunity to convince a state licensing agency to take action. *See id.*

Remedial action can also be sought by a state licensing agency against the federal department or agency. Pursuant to § 107d–1(b), when a state licensing agency believes that the federal entity responsible for a facility is out of compliance with the Randolph–Sheppard Act, that state agency may file a complaint with the Education Secretary, who shall convene a § 107d–2 arbitration panel. The decision of the arbitration panel is subject to appeal and review as a final agency action. If the panel finds the "acts and practices" of the federal agency violate the Randolph–Sheppard Act, "the head of [the] department, agency, or instrumentality shall cause such acts or practices to be terminated promptly and shall take such other action as may be necessary to carry out the decision of the panel." 20 U.S.C.A. § 107d–2(b)(2).

### B. The Alabama Department of Rehabilitation Services

The ADRS is the designated state licensing agency for the State of Alabama. It represents that 48 vending facilities on federal property in Alabama are currently operated by licensed blind vendors under the Randolph–Sheppard Act. These facilities benefit approximately 140 blind Alabamians and employ more than 300 others. The ADRS further claims that, with the exception of the VA and the VCS, it has enjoyed excellent cooperation from the federal agencies with which it works.

The ADRS contends that its dispute with the defendants dates back to January 1989, when it first inquired into the possibility of operating vending facilities at the Veterans Administration Hospital in Tuscaloosa, Alabama. Soon thereafter, during 1990 and 1991, the ADRS submitted applications to the VA to run vending facilities in Tuscaloosa, Montgomery, and Tuskegee, Alabama, but these were denied. The ADRS continued to submit applications to the VA, most recently in July 1996, for VA facilities in Tuscaloosa, Tuskegee, Montgomery, and Birmingham, Alabama. Meetings between the VA and the ADRS took place into 1998, but no agreement to establish vending facilities at these sites was ever reached.[2]

---

**2.** The ADRS's dispute with the VA over the VA's participation in the Randolph–Sheppard Act is not unique to Alabama. The VA, in addition to being subject to the requirements of the Randolph–Sheppard Act, is also subject to the Veterans Canteen Service Act, 38 U.S.C.A. § 7801–10, which established the VCS to "mak[e] available to veterans ... at reasonable prices, articles of merchandise and services essential to their comfort and well-being." 38 U.S.C.A. § 7801. Because the Veterans Canteen Service Act and the Randolph–Sheppard Act aim to provide similar services, the two schemes can come into conflict. This conflict has been the source of litigation elsewhere. *See, e.g., Minnesota Dept. of Economic Sec. v. Riley,* 107 F.3d 648 (8th Cir.1997); *State of Minn., Dept. of Jobs and Training v. Riley,* 18 F.3d 606 (8th Cir. 1994). Whether a conflict between the Randolph–Sheppard Act and the Veterans Canteen Act has been the source of the VA's reluctance to allow the ADRS to operate facilities on VA property could be a relevant issue if the court reached the merits of this claim, but because it will not, the issue need not be reached.

On June 19, 1998, the ADRS filed an administrative grievance, pursuant to 20 U.S.C.A. § 107d–1(b), alleging that the VA and VCS had failed to comply with the requirements of the Randolph–Sheppard Act with respect to its 1995 applications to operate vending facilities in Tuscaloosa, Tuskegee, Birmingham, and Montgomery. Specifically, the issues framed for the arbitration panel by the ADRS were: "whether the VA and the VCS determinations that there is no suitable space available for blind vending facilities at the VA's Montgomery and Tuskegee locations and the failure of the VA Medical Center Directors at the VA's Birmingham and Tuscaloosa locations to approve the applications for blind vending permits are contrary to and in violation of the [Randolph–Sheppard Act] and its implementing regulations." First Arbitration Complaint, filed June 19, 1998.

The first arbitration panel issued its findings on October 20, 2000, concluding that the VA and the VCS had violated the Randolph–Sheppard Act in three ways: (1) the VA and the VCS did not timely process the ADRS's 1995 applications; (2) the VA and the VCS did not give reasons for its denial of the Montgomery and Tuskegee applications, as required by 34 C.F.R. § 395.16; and (3) the VA and the VCS did not provide timely notice of substantial renovations at the Birmingham and Tuscaloosa sites, as required by 34 C.F.R. § 395.31(c). The panel observed that the VA and the VCS appeared to take the position that operation of blind vending facilities under the Randolph–Sheppard Act would undermine the viability of the VCS or, in other words, that the licensing of vendors under the act would be adverse to the interests of the United States. Although the panel noted that this reason could be a valid one under 34 C.F.R. § 395.30(b), the panel did not consider it because the VA and the VCS did not argue it. In addition, the panel did not issue an award because the panel concluded that it "[did] not have authority to prescribe remedies." The arbitration decision was referred to the VA; action on it is still pending.

On December 21, 2000, the ADRS filed a second complaint with the Education Secretary alleging three violations of the Randolph–Sheppard Act by the VA and the VCS. Two of these allegations were new: (1) the VA's failure to respond to 33 applications and permits submitted to them by the ADRS in March 2000; and (2) the VA's failure to pay to the ADRS disbursements from vending facilities operated by private entities under contract with the VCS since 1975. The last claim (3) attacked the VA's failure to act on the arbitration award of the first arbitration panel. A panel for the second arbitration complaint has not yet convened or issued findings.

## II. DISCUSSION

### A. Legal Standard

The court will first consider the defendants' motion to dismiss. In considering defendants' dismissal motion, the court accepts the ADRS's allegations as true, see Fed.R.Civ.P. 12(b); *Andreu v. Sapp*, 919 F.2d 637, 639 (11th Cir.1990), and construes the complaint liberally in its favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The lawsuit may not be dismissed unless the ADRS can prove no set of facts supporting the relief requested. *See id.* at 236, 94 S.Ct. at 1686; *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir.1993).

■ The defendants' motion correctly asserts that, because the administrative-review process required under the Randolph–Sheppard Act has not yet been exhausted, the ADRS has not properly stated a claim. Pending exhaustion of this process and absent special circumstances

not present here, this court does not have the authority to grant the requested relief. Because the court concludes the ADRS's lawsuit is due to be dismissed, it need not reach the merits of the ADRS's motion for preliminary injunction.

### B. Failure to Exhaust Administrative Remedies

As a general matter, "[w]here Congress specifically mandates, exhaustion [of administrative remedies] is required." *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992); *see also Richardson v. Reno,* 162 F.3d 1338, 1373 (11th Cir.1998), *judgment vacated on other grounds,* 526 U.S. 1142, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999). Thus, where there is a specific congressional mandate that administrative remedies must run their course before a valid claim in an Article III court can be made, this court does not have authority to grant relief before exhaustion occurs. *See Alexander v. Hawk,* 159 F.3d 1321, 1325 (11th Cir.1998).

 The Randolph–Sheppard Act's plain language does not expressly require exhaustion, but courts have construed the act's administrative framework to be mandatory. *See, e.g., Committee of Blind Vendors v. District of Columbia,* 28 F.3d 130, 134 (D.C.Cir.1994) (holding that, in light of the "unmistakable intent of Congress," the district court's failure to require exhaus-

tion of administrative remedies was an abuse of discretion); *see also Randolph–Sheppard Vendors of America v. Weinberger,* 795 F.2d 90, 103–104 (D.C.Cir. 1986); *Fillinger v. Cleveland Society for the Blind,* 587 F.2d 336, 338 (6th Cir.1978). The act "establishes a clear and explicit system for resolution of disputes." *Weinberger,* 795 F.2d at 102. What is more, this scheme is "carefully structured," employing different procedures for claims raised by individual vendors and the state licensing agencies. *See Nash,* 915 F.2d at 1495. "It is unlikely, after establishing a specific dispute resolution system and conditioning judicial review on a final agency action, that Congress contemplated that an aggrieved party could, whenever it chose, circumvent the system and seek de novo determination in federal court." *Weinberger,* 795 F.2d at 103. Keeping with the federal courts for appeals that have examined this issue and based on congressional intent as expressed through the remedial scheme it established, this court concurs that exhaustion of administrative remedies is required under the Randolph–Sheppard Act.[3]

It is not disputed that administrative remedies here have not yet been exhausted. With respect to the first administrative complaint, the ADRS has received a favorable arbitration decision, but no action has been taken by the VA.

**3.** The court notes that the Randolph–Sheppard Act does not expressly require exhaustion as a predicate for judicial relief; whereas other statutory schemes do make the exhaustion requirement explicit. *See, e.g., Richardson,* 162 F.3d at 1373 (requiring exhaustion where 8 U.S.C.A. § 1252(b)(9) expressly requires it for claims under the Immigration and Naturalization Act). This omission could be seen as the absence of the "specific mandate" *McCarthy* requires. However, *McCarthy* and other cases show that it is not just the express language of the statute, but the entire statutory scheme and the Congressional intent

surmised from it, that is the basis for determining a specific congressional mandate. *See McCarthy,* 503 U.S. at 150–52, 112 S.Ct. at 1089–90; *accord Brown v. General Services Administration,* 425 U.S. 820, 833–34, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976) (relying upon the "balance, completeness, and structural integrity" of the statutory scheme to interpret the administrative prerequisites to judicial relief under the Civil Rights Act). Under this comprehensive approach, there is little doubt that the Randolph–Sheppard Act requirements are mandatory.

With respect to the second administrative complaint, no arbitration panel has even convened to hear the merits of the case. It follows, therefore, that this court does not have jurisdiction to grant relief at this time and this lawsuit is due to be dismissed.

Relying on *Weinberger*, the ADRS claims that the mandatory exhaustion required by the Randolph–Sheppard Act applies only when permanent, and not preliminary, relief is requested. Neither *Weinberger*, nor any other authority submitted to the court, makes such a distinction. The issue in *Weinberger* was the appropriateness of judicial intervention in a mandatory administrative process; whether the relief requested was preliminary or permanent was not relevant there and is not relevant here. The underlying issue is the authority of the court to proceed. In other words, if this court does not have power to intervene in the arbitration process because the process has not been exhausted, it does not have power to enter either preliminary or permanent relief until the process is exhausted absent special circumstances.[4]

In spite of this flaw in the ADRS's lawsuit, it raises four grounds to justify this court's intervention: (i) that the VA and the VCS's longstanding reluctance to grant contracts under the Randolph–Sheppard Act indicates that further administrative proceedings would be futile; (ii) that the

ADRS and the putative intervenor Lucy Howard will suffer irreparable harm if the VA is not enjoined; (iii) that, absent preliminary injunctive relief, it will be impossible for the VA to grant adequate relief should the VA be successful on the merits of its lawsuit; and (iv) that the only issues in this case are questions of law. By making these contentions, the ADRS attempts to cast this case as one of the rare situations where judicial intervention in a statutorily-mandated administrative process is appropriate. *See Weinberger*, 795 F.2d at 104–111 (reviewing exceptions to the exhaustion requirement in light of a challenge to the Randolph–Sheppard Act).

■ Although there are some situations where judicial intervention in an administrative process may be warranted, requiring exhaustion is still the "general rule" because "the exhaustion doctrine recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *McCarthy*, 503 U.S. at 145, 112 S.Ct. at 1086. In light of the facts of this case, "sound judicial discretion" still requires the court to decline jurisdiction over this matter in light of the incomplete administrative process. *See id.* at 144, 112 S.Ct. at 1086. As the following discussion shows, none of the four grounds raised by

---

4. There may be some tension between the holdings of *Weinberger* and *Committee of Blind Vendors*. Specifically, the *Weinberger* court noted that arbitration was mandatory under the Randolph–Sheppard Act, but proceeded nonetheless, to review exceptions to the general rule of exhaustion. Ultimately, the *Weinberger* court concluded that relief was not due because irreparable harm had not been established. *Committee of Blind Vendors*, on the other hand, did not entertain exceptions to the exhaustion requirement. In light of *McCarthy* and prior judicial interpre-

tations of the act as specifically mandating arbitration, the court understands the *Weinberger* court's discussion of possible exceptions to the exhaustion rule to be dicta to the extent that it may imply the act's arbitration provisions are not mandatory. *Weinberger* does not diminish the act's requirement that administrative procedures under the act must be exhausted before judicial intervention. Nevertheless, the court here has assumed that exceptions apply and thus has addressed them.

the ADRS establishes sufficient grounds to support the exercise of this court's jurisdiction.

### i. Futility

■ The ADRS argues that the "futility exception should ... apply under the particular facts of this case, given the long-standing refusal of the VA and its Veterans Canteen Service ... to comply with the Randolph–Sheppard Act, not just in this case but also in other cases." The ADRS points to two sources of evidence for its argument: (1) the past unwillingness of the defendants to allow vendors under the act to operate in its Alabama facilities; and (2) the VA's unwillingness to accommodate blind vendors in other jurisdictions.

■ An administrative process is futile "if the agency will almost certainly deny any relief either because it has a preconceived position on, or lacks jurisdiction over, the matter." *Weinberger*, 795 F.2d at 107. The court must look to the agency's intentions regarding its position on granting relief. *See id.* In other words, an administrative process is futile when it either cannot provide the relief requested or when the agency has decided as a general matter and before the merits of a particular claim are heard that it will not grant relief. An administrative process is not "futile" simply because a defendant disputes a claim raised against it and submitted to the process for resolution.

The ADRS has proffered no evidence that the defendants have either a preconceived position against granting relief or indicated that they do not believe they have jurisdiction over the matter. The defendants have contested the ADRS's demands and submitted them to the dispute resolution process established by Congress. The ADRS has received a favorable ruling from the first arbitration panel and no ruling yet on the second. There is nothing in the record, other than supposition based on past acts by the defendants here and in other jurisdictions, to indicate that the defendants will not take appropriate steps in accordance with the first arbitration ruling and the second one when it is issued.

The ADRS's futility argument is really little more than an attempt to get this court to enjoin the defendants before they have an opportunity to remedy the violation. It may be that the defendants will, as the ADRS argues, fail to "cause such acts or practices [in violation of the Randolph–Sheppard Act] to be terminated promptly and [fail to] take such other action as may be necessary to carry out the decision of the panel." 20 U.S.C.A. § 107d–2(b)(2). But until the defendants act, or refuse to act, in response to the findings of the arbitration panels, the remedial process is not complete. Accordingly, the values served by the complete operation of this process prevent this court from intervening. *See Weinberger*, 795 F.2d at 105.

### ii. Irreparable Harm

■ The ADRS also contends that it is entitled to judicial relief from the administrative process because, in the absence of such relief it and the blind vendors it represents will suffer irreparable harm. Specifically, the ADRS identifies four harms it will suffer during the pendency of administrative review. The court concludes that none is irreparable requiring this court's intervention in the administrative process.

(1) *The VA's failure to allow blind vendors at any of the 33 sites proposed by the ADRS.* The ADRS submitted 33 applications for vending sites to the VA in March 2000, none of which has been accepted. The ADRS maintains that "the lack of satisfactory sites for Randolph–Sheppard vending facilities at any of the VA build-

ings in Alabama irreparably harms the ADRS's ability to fulfill its statutory duty to provide remunerative employment to its blind vendors."

This argument does not demonstrate irreparable injury for at least two reasons. First, the adequacy of the defendants' response to the ADRS's 33 applications was submitted for arbitration, but a panel has not yet issued a ruling. Of course, it is possible that the defendants have acted within the requirements of the Randolph–Sheppard Act; in which case, no claim would therefore exists. It is also possible that the arbitration panel will rule in favor of the ADRS, requiring the defendants to "take such action as may be necessary to carry out the decision of the panel." In that case, the only possible injury at this point is the time it has taken the administrative procedure to operate. The second administrative complaint was filed in December 2000; there is no evidence that the process has been unusually delayed. *See Weinberger*, 795 F.2d at 108. The court sees no reason to intervene at this time.

Second, the only injury asserted by the ADRS is an inability "to fulfill its statutory duty." This is the kind of remote and speculative injury that is not enough to justify the injunctive relief requested by the ADRS. *See Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990). Without some actual and imminent harm, the court finds no basis to issue injunctive relief before administrative remedies are exhausted.[5]

The ADRS's requested remedy—a court order requiring the defendants to approve the permits pending the outcome of the arbitration panel's decision—underscores the inappropriate nature of the ADRS's prayer for relief.[6] Apparently, the merits of the defendants' position matter little to the ADRS, as it would have the court presume the correctness of its position, upset the status quo by requiring the displacement of vendors already in place in VA facilities, and worry about the consequences of an arbitration panel's finding in favor of the defendants later. The ADRS and the blind vendors it represents are not necessarily entitled to have their permits approved. The Randolph–Sheppard Act only gives blind vendors "priority" subject to adverse affect on the interests of the United States. *See* 20 U.S.C.A. § 107(b). There is a statutory process in place to determine, on a case-by-case basis, whether a site is appropriate for a blind vendor. There is no irreparable harm requiring affirmative injunctive relief before the merits of these 33 applications and permits have been determined.

■ (2) *Renovation of the Birmingham VA Hospital without provision of satisfactory sites for vending:* The ADRS contends that the VA Hospital in Birmingham is being renovated with a design that does not adequately accommodate blind vendors, in violation of the Randolph–Sheppard Act. *See* 20 U.S.C.A. § 107a(d) (federally-owned facilities "substantially altered or renovated" shall "include[ ] a site

5. Putative intervenor Lucy Howard further alleges that she personally is irreparably harmed by the VA's failure to make sites available because she wants a permanent placement so that she can settle her family. Although the court appreciates Howard's concern, it has no weight in this proceeding. There is no evidence in the record that Howard would receive any one of the 33 spots currently in arbitration.

6. In its first motion for preliminary injunction, filed February 2, 2001, the ADRS asked for a court order "[d]irecting that the 33 Applications and Permits submitted to the VA by the ADRS in March 2000 either be approved or in the alternative that written reasons for their disapproval be issued forthwith by those Defendants responsible for such." In its latest brief on injunctive relief, it has dropped its alternative request.

or sites for the location and operation of a vending facility by a blind person"). It now argues that, "in the absence of an injunction, the ADRS will be irreparably harmed by the substantial alteration or renovation of VAMC Birmingham." For relief, the ADRS now requests the court to enjoin the VA from further construction until vending sites suitable to the ADRS are provided.[7]

The ADRS's objection to construction at the Birmingham site was raised in its first arbitration complaint, and the arbitration panel ruled in its favor, finding that the defendants did not provide notice to the ADRS of the renovations or allow access to the facilities, personnel numbers, and financial data, to evaluate the site.[8] To the extent that the issue here is one of notice to the ADRS of the renovation, the court finds no irreparable harm. The ADRS has not identified any way the defendants' apparent failure to tell it about the renovations caused any harm to the ADRS other than the minor harm arising out of a technical violation of the rules enforcing the Randolph–Sheppard Act.

The court also cannot find irreparable harm if it considers the violation to be the construction itself rather than just the failure of notice. This is what the ADRS now appears to contend, particularly by asking for an injunction to prevent further construction. There is no evidence in the record that construction at the Birmingham site has foreclosed the availability of sites for blind vendors. In fact, the evidence shows that vending facilities continue to operate in the Birmingham hospital, just not ones operated by blind vendors.[9] Should defendants ultimately be ordered to provide vending sites to blind vendors, the court sees no reason why these existing sites would not be appropriate. Of course, the defendants would be responsible for the costs of any necessary renovations should they be necessary. But absent a showing that this new construction makes in impossible for the Birmingham site to accommodate blind vendors, the ADRS has failed to show how the harm it is allegedly suffering is irreparable.

▪ (3) *Unavailability of monetary damages:* On this point, the ADRS makes two arguments. First, the ADRS argues that, "[i]n the absence of a concession from the defendants that monetary damages are available if the ADRS prevails in its arbitration, the ADRS will be irreparably harmed if, at the end of the lengthy arbitration, it prevails but is barred from collecting any money damages for the vending machine income that has accrued between now and then."[10] Second, it argues that even if the defendants were to concede that an award of monetary damages were available, a future damage award "would not fully remedy the harm suffered" because the ADRS does not have the money available to it now in order to enlarge employment opportunities for blind Alabamians.

7. This specific request was not contained in the ADRS's initial request for injunctive relief.

8. The defendants contest whether notice was required under the Randolph–Sheppard Act, a question which turns on fact-specific inquiries about the size of the building and the nature of the renovations.

9. *See* Aff. of Perry Hopper at ¶ 7 (indicating that he had "personally observed vending machines operated by the Veteran's Canteen Service and other machines operated by private vending companies located on the floors of the buildings where [he] also observed substantial alterations and renovations taking place and being completed)."

10. The damages sought by the ADRS consist of vending machine income to non-act vendors to which blind vendors are entitled under the act. *See* 20 U.S.C.A. § 107d–3.

The first argument is really more akin to a claim of futility rather than irreparable harm. The import of the ADRS's argument is that the arbitration panel does not have authority to grant the relief it seeks, so continuing in that process would be a waste of time and money, or futile. This argument has no merit because it fails to take into account the entire remedial scheme set forth in the statute. The ADRS is correct to note that an arbitration panel convened under § 107d–1(b) (state licensing agency claims against federal entity) has the limited power of declaring a federal department out of compliance with the Randolph–Sheppard Act. *See* 20 U.S.C.A. § 170d–2(b)(2); *see also Nash*, 915 F.2d at 1492; *Maryland St.Dept. of Education v. United States Dept. of Veterans Affairs*, 98 F.3d 165, 170 (4th Cir. 1996). Once an arbitration panel finds the federal entity out of compliance, "the statute expressly places the obligation of ending the violation on the federal entity itself." *Nash*, 915 F.2d at 1492. At this point, the responsibility for remedying the failures identified by the panel rests with the department head. 20 U.S.C.A. § 107d–2(b)(2).

Concerning the claims in the ADRS's first complaint, the arbitration panel acted correctly: it found the VA out of compliance, but did not issue a remedy because it did not have jurisdiction to do so. That responsibility remains with the VA, and there is no evidence the VA will not pay appropriate damages if found in violation of the Randolph–Sheppard Act. As to claims in the second complaint, there has not yet even been a finding of a violation.

Of course, this result begs the question: what remedy does the state licensing agency have under the Randolph–Sheppard Act if the federal entity is found in violation of the act by the § 107d–1(b) arbitration panel, but refuses to act? In a similar situation, the Fourth Circuit Court of Appeals has concluded that the appropriate remedy for the state licensing agency would be to file a second arbitration claim. "[T]his solution may seem cumbersome, but it is not so gross as to shock the general moral or common sense [and,] therefore, we must adhere to the result dictated by the plain language of the statute." *Maryland St. Dept. of Education*, 98 F.3d at 171 (internal quotations omitted) (relying in part on the analysis of the Eleventh Circuit Court of Appeals in *Nash* ). Whether this "cumbersome" process is futile under these facts need not be addressed here because the defendants have not refused to act. The ADRS has challenged the defendants' failure to act in the second arbitration complaint, but because the VA has not taken a position on the findings of the first panel, it is premature for this court to intervene.

The ADRS's second argument makes little sense in light of the relief it is seeking. The ADRS has petitioned this court to order the defendants to pay all vending machine income since 1975 into escrow. Were the court to issue such an order, the ADRS would not be able to access these funds until the ultimate resolution of this case. The present "irreparable" harm it claims it would suffer therefore could not be rectified by the money in the escrow account. Further, the ADRS's professed harm that continued delay in receiving this money prevents it from enlarging employment opportunities for blind Alabamians is again of the vague and general sort incapable of supporting preliminary-injunctive relief. *See Northeastern Fla. Chapter of the Ass'n of Gen. Contractors*, 896 F.2d at 1285. Accordingly, it does not provide grounds for the court to intervene in the administrative process.

■ (4) *New contracts between the VA and outside vendors:* As its final source of irreparable harm, the ADRS cites concern

that the defendants will enter into new contracts with private vendors, as it has done in the past, to run vending machines on its premises. The ADRS concludes that, "if such new contracts must be honored until they expire despite having been entered in violation of the Randolph–Sheppard Act, plaintiffs will continue to suffer the effects of these violations into the future."

In a telephone conference on February 13, 2001, the court noted its concern about the possibility that the defendants would enter into contracts before the conclusion of the administrative review that would preclude the possibility of blind vendors obtaining permits for VA buildings. The court specifically instructed the defendants to disclose information on their contracts with vendors. Now that the ADRS has had the opportunity to review this information, it is clear to the court that these concerns were unfounded. There is no evidence in the record that the defendants are about to sign vending contracts or plan to solicit for vending contracts in the near future. The government has represented to the court that its present contracts terminate in 2005. The ADRS's argument that it needs immediate relief has no basis in fact. If the defendants are out of compliance with the Randolph–Sheppard Act, the ADRS and blind vendors may be suffering because of these contracts, but that harm can be remedied just as easily at the end of the administrative process as in the federal courts now. Accordingly, the ADRS has not sufficiently established that grounds to excuse its failure to exhaust administrative remedies because of the threat of irreparable harm.

### iii. Inadequate Remedy

Although the ADRS raises an additional justification for its failure to exhaust administrative remedies in that the remedies available to it are inadequate, this argument has already been addressed by the court. The ADRS incorrectly focuses on the decision of the arbitration panel, which cannot order a federal entity to comply with the Randolph–Sheppard Act. A remedy would only be inadequate here if the federal entity itself were unable to grant the relief after the arbitration panel found that it violated the act. There has been no showing that the VA would be unable to come into compliance with the act in this case.

### iv. Matter of Law

■ The ADRS contends that exhaustion here should not be required because the issue between the parties is a "pure matter of law as to which specialized administrative understanding plays little role." *Ezratty v. Puerto Rico,* 648 F.2d 770, 774 (1st Cir.1981). As the preceding discussion has established, this dispute is far from a pure matter of law to which administrative expertise adds little. Several of the ADRS's own arguments require interpretation of the Randolph–Sheppard Act and its promulgated regulations in light of the present facts. For example, the ADRS's complaint to the second arbitration panel that the VA owes it over 25 years of vending machine proceeds requires a decision as to whether the vending machines in question are "operated by" the VCS and therefore not subject to the requirements of the act. In addition, the ADRS claims that it did not receive proper notice of renovations at the Birmingham VA Medical Center, a claim which the defendants dispute. Resolution of this claim requires a determination as to whether that facility fits within the specifications established by the regulations that promulgate the act, an inquiry that is fact-specific and well-served by administrative expertise. The procedure administered by the Education Secretary is better suited than this court to deal with these fact-specific issues.

### III. CONCLUSION

For the reasons herein stated, the court concludes that the ADRS is required to exhaust the administrative remedies required under the Randolph–Sheppard Act, and, until that requirement is met, the court will not intervene in the administrative process. Accordingly, the defendants' motion to dismiss will be granted, and the ADRS's motion for a preliminary injunction will be denied as moot.